## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Ashley Lessard, Jackie Abrams, Thomas Walton, and Joy White on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Capulet Entertainment, LLC and Estevan Vega<br><br>Defendants. | Civil Action No.:<br><br><br><br><br>COMPLAINT – CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

Plaintiffs Ashley Lessard, Jackie Abrams, Thomas Walton, and Joy White, by and through their attorneys, on behalf of themselves and others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, alleges the following:

### I.    INTRODUCTION

1.    In June 2024, Defendants Capulet Entertainment, LLC and Estevan Vega (collectively, "Defendants") orchestrated a scheme at the Capulet Fest in Connecticut, resulting in significant financial and emotional harm to Plaintiffs and countless other attendees. Despite promises of a world-class experience, Defendants failed to deliver on their contractual obligations, thereby breaching their contract and deceiving thousands of consumers in New England.

2.    Additionally, Defendants' deceptive and unlawful practices were in blatant disregard for consumer protection laws in Connecticut, Massachusetts, Pennsylvania, and Rhode Island.

3.      Finally, Defendants' negligence caused considerable damage to the Plaintiffs and ticketholders. This resulted in increased expenses and widespread disappointment.

4.      Plaintiffs seek restitution for the financial losses incurred, damages for the emotional distress suffered, and injunctive relief to prevent further harm to consumers.

5.      Capulet Fest 2024 (the "Event") was marred by disorganization, a radical, last-minute venue change, performances that were inexplicably cut short, and the outright cancellation of an entire day of performances, none of which resembled the advertised experience. Furthermore, Defendants have not and show no intention of issuing refunds for tickets and associated expenses, exacerbating the financial losses suffered by attendees.

6.      Defendants' actions were so egregious that the Office of the Attorney General of Connecticut announced, on July 2, 2024, that it was opening an investigation into Defendants.

7.      This class action lawsuit, brought pursuant to Federal Rule of Civil Procedure 23, seeks to redress the widespread harm caused by Defendants' deceptive practices and ensure accountability for their egregious misconduct. Plaintiffs seek restitution for the cost of tickets and associated expenses, damages for the emotional distress caused by the festival's shortcomings, and injunctive relief to prevent further harm to consumers.

## II.    **PARTIES**

8.      Plaintiff Ashley Lessard is a music-lover and a citizen of Middletown, Connecticut who purchased a Royal Pass for Capulet Fest 2024.

9.      Plaintiff Jackie Abrams is a music-lover and a citizen of Worcester, Massachusetts who purchased tickets for Capulet Fest 2024.

10.     Plaintiff Thomas Walton is a music-lover and a citizen of Bethlehem, Pennsylvania who purchased a Royal Pass for Capulet Fest 2024.

11.     Plaintiff Joy White is a music-lover and a resident and citizen of West Warwick, Rhode Island who purchased tickets for Capulet Fest 2024.

12.     The members of the Class and Subclasses, including Plaintiffs, are those individuals who purchased Capulet Fest 2024 tickets.

13.     Defendant Capulet Entertainment, LLC ("Capulet") is an independent promotion company founded in 2012 by author and music enthusiast Estevan Vega. The company is headquartered in Colchester, Connecticut, and specializes in organizing and promoting events in the New England area, particularly focusing on the alternative rock and metal scenes. Defendant Capulet is a limited liability company. Capulet's sole member is Estevan Vega, a citizen of Connective, and therefore Capulet is a citizen of Connecticut.

14.     Defendant Estevan Vega is the sole member of Capulet and is a resident and citizen of Connecticut. Defendant Vega has total operational control over Capulet and dictates its activities.

### III.    JURISDICTION AND VENUE

15.     This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

16.     This Court has personal jurisdiction over Capulet because it is located in this District, transacts business in this District, employs people in this District, and has significant contacts with this District.

17.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant Capulet is headquartered in this District. Further, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and it is subject to personal jurisdiction here.

IV.    **BACKGROUND**

A. *Defendants' Deceptive Advertising and Misleading Representations of the Event*

18.    Contrary to the three-day, outdoor festival experience promised through their promotional materials, would-be concertgoers found themselves hoodwinked by Capulet Fest 2024. Defendants enticed consumers with promises of a three-day extravaganza featuring over 50 bands across two stages, a diverse array of food vendors, and a vibrant marketplace teeming with unique offerings — none of which was provided.

19.    In late February 2024, Defendants announced Capulet Fest 2024, a weekend festival promising entertainment and fun. A press release detailed the event's band lineup, various food and vendor offerings, and the venue: The Thompson Speedway Motorsports Park.[1]

20.    The Event was advertised as taking place over three days, June 28–30, 2024, with the following start times:

-    Friday, June 28th: Doors GA 4pm; Early Entry 3:30pm

-    Saturday, June 29th and Sunday, June 30th: Doors GA 11am; Early Entry 10am

21.    Defendants promoted Capulet Fest 2024 as an "unforgettable weekend of excitement," promising attendees a captivating and well-organized festival experience at the renowned Thompson Speedway Motorsports Park. Through their website and marketing materials, they painted a vivid picture of multiple stages, a diverse array of food trucks, and a bustling marketplace filled with vendors. *Id.* The festival's lineup, featuring a carefully curated mix of established and emerging rock and metal artists, was presented as a "must-attend event for music enthusiasts of all ages." *Id.*

---

[1] *See* Capulet Entertainment Presents: First Official Press Announcement For Capulet Fest 2024, available at: https://www.musicindustrypost.com/article/692077306-capulet-entertainment-presents-first-official-press-announcement-for-capulet-fest-2024 (last accessed July 3, 2024)

22.     Tickets were priced from $65 to $700, with add-on prices for perks. As shown below, a ticket for Friday alone was $65, while stand-alone tickets for Saturday or Sunday were $75. A ticket for all three days was $190 plus fees. The Royal Pass, for $700, included entry for all three days and a range of perks including Meet and Greets for all 3 days and a lounge with air conditioned indoor bathrooms and complementary waters.



23.     To further entice potential attendees, Defendants offered and sold exclusive VIP packages, including meet-and-greet opportunities with select artists, and tempting merchandise bundles. VIP Meet and Greet experiences ranged from $100 (plus a $8.26 fee) for Friday and $175 (plus a $10.58 fee) for either Saturday or Sunday. Defendants also offered and sold a merchandise bundle for $60 (plus $5.79 for taxes and fees), as shown below.



*Id.*

### B. Bait and Switch

24.     On Thursday, June 27, 2024, just one day before the Event's scheduled start, Defendants abruptly announced a significant change of venue via social media, citing "a discrepancy and some miscommunication with the production crew and the speedway."[2] The Event was moved from Thompson Speedway Motorsports Park, with a capacity of 13,000 attendees, to The Webster in Hartford, a venue capable of accommodating only 1,200 individuals and located over 50 miles from the original location.[3]

25.     This last-minute, unexpected relocation resulted in a significant number of bands no longer participating in the Event, including It Dies Today and Upon A Burning Body. *Id.* At that point, the Event was a mere shadow of how it was advertised, as shown by the following photos taken by attendees and posted to Facebook:

---

[2] Weiss, Abby, CT Inside, *Third day of Capulet Fest in Hartford canceled after sudden venue, lineup change* (June 30, 2024), available at: https://www.ctinsider.com/news/article/capulet-fest-2024-sunday-canceled-hartford-ct-19547911.php (last accessed July 3, 2024).

[3] Kennelly, Greg, Metal Injection, *Capulet Fest 2024 Cancelled Midway Through One Band's Set, Third Day Never Happened* (July 1, 2024), available at: https://metalinjection.net/news/bummer-alert/caplet-fest-2024-cancelled-midway-through-one-bands-set-third-day-never-happened   (last accessed July 3, 2024).




Dead.



26.    As one Facebook user posted, there was a drastic difference between what was advertised and what was offered, writing, "the Capulet Fest we paid for vs. what we actually got:"



27.     According to the band LiveKill, the Event was shut down midway through their set when security came in and made everyone leave, purportedly due to the festival organizers' failure to pay the rent. *Id.*

28.     Defendants abruptly cancelled the entirety of the Sunday June 30, 2024 performances late Saturday via social media. Defendants released the following statement:

> We fought. We wrestled with obstacle after obstacle. We became a target. We became hated, even when we were doing our best to save something and give you the best show possible. No one sees the sacrifice. All they do is judge. We did everything we could. We hope you had fun. We did our best. Thank you to everyone who came out and had a blast. We hope you enjoyed the meet and greets. We hope you enjoyed the music. Goodbye.[4]

29.     Defendants failed to provide any explanation for cancelling the Sunday events.

---

[4] *See Third day of Capulet Fest in Hartford canceled*, *supra* n. 3.

### C.    The Aftermath

30.    Following the cancellation of Sunday's event, disappointed ticket holders inundated Defendants' social media platforms with a barrage of complaints, which quickly caught the attention of Connecticut Attorney General William Tong, prompting his office to intervene.

31.    On Facebook, users set up a "Victims of Capulet Fest 2024" page where users shared their widespread frustration and dissatisfaction, including several of the bands slated to play at the Event.[5]  Gage Gluck, a Dayville resident who purchased a one-day general admission ticket, told Hearst Connecticut Media via messenger Sunday afternoon that they have not received a refund nor heard any additional information from the organizer. Gluck opted not to attend the event after the venue was switched to The Webster, since Hartford is an hour-drive away for him. "I'm demanding for people who are asking for it to be given refunds. We all paid for a 3-day 55-band festival that got moved and turned into a 2-day 20 band fest," he said.[6]

32.    On July 3, 2024, AG Tong addressed the media regarding the Event. He stated: "nothing makes me more angry than seeing people in our state getting ripped off and I'm afraid that's what happened with the Capulet music festival."[7] AG Tong mentioned a billboard he had seen promoting the Event, and stated "that billboard feels like one giant misrepresentation and lie told to the people who paid good money for these tickets." Following the event, AG Tong's office received dozens of complaints. "What happened to the people who paid for tickets was outrageous, it's wrong and it's unacceptable." *Id.* AG Tong concluded the press conference by announcing his office's investigation into Defendants.

---

[5] *See* https://www.facebook.com/groups/856270126344337 (last accessed July 3, 2024).
[6] *See Third day of Capulet Fest in Hartford canceled*, *supra* n. 3.
[7] *See* https://www.facebook.com/WFSB3/videos/998059095312351/ (last accessed July 3, 2024).

33.     To date, Plaintiffs have not received a refund for their ticket purchases, and Defendants have not announced any intention to refund any monies to ticket purchasers.

34.     Plaintiffs and other Class members sustained damages as a direct and proximate result of Defendants' deceptive and unlawful practices, negligence, and wrongful conduct and omissions in connection with the advertising and sale of tickets to Capulet Fest 2024.

35.     Plaintiffs, the Class, and the Subclasses (as defined below) have been damaged by Defendants' deceptive, negligent, and unfair conduct in that they purchased tickets for Capulet Fest 2024, which they would not have otherwise purchased, had Defendants not misrepresented the experience of attending the Event.

### D.     Plaintiffs' Experiences

36.     Ashley Lessard purchased a ticket for Sunday, along with a VIP add-on to meet the bands and for the merchandise for a total of $693.34. She purchased her ticket directly through Defendants' website in March 2024. She expected to receive entry on Sunday to Capulet Fest 2024 and access to various food trucks and activities. Instead, Ms. Lessard received none of what she was promised. She was prevented from attending the Event at all because Defendants cancelled the Sunday portion of the Event late on Saturday before the show. Ms. Lessard regrets buying a ticket for the Event.

37.     Jackie Abrams purchased two tickets for the Event, covering both Saturday and Sunday, for a total of $111. Despite the change in venue, Ms. Abrams drove an extra 40 minutes to reach The Webster in Hartford. Upon arrival, she found that the crowd consisted of, at most, several hundred individuals instead of the thousands anticipated. Additionally, there were no vendors or food trucks present, and several of the main bands advertised did not show up. Those bands that did perform had their sets drastically cut short, playing only two songs instead of a full

set. As a result of the Event being canceled, Ms. Abrams was unable to attend on Sunday. She

regrets purchasing tickets for the Event.

38.     Thomas Walton purchased a Royal Pass for $743 directly through the Defendants'

website in March 2024. Additionally, he booked a hotel room for $300, preparing to travel from

his home in Pennsylvania to Connecticut to attend the Event. However, on Thursday, he received

news that the Event was effectively canceled due to the venue change and significant alterations

to the overall experience. This abrupt change in plans meant that the entire experience he had

anticipated was no longer available, preventing him from attending the Event. Consequently, Mr.

Walton regrets purchasing the Royal Pass for the Event.

39.     Joy White bought two tickets for general admission on Sunday, along with the VIP

Parking and VIP upgrade for $631.52 directly through Defendants' website. She had planned on

seeing Sunday's headliner, Nothing More, but was unable to due to the cancellation of the Sunday

June 30 performances.

40.     Defendants have not offered to refund any money to Plaintiffs or the Class or

Subclasses. One user on Facebook posted a screenshot showing Defendants' return policy, which

states that refunds will not be provided under any circumstances. Per the screenshot, "[a]ll tickets

purchased to Capulet Fest 2024 are considered non-refundable" and refunds would ***not*** be

"provided under any circumstances including the postponement of the event dates, change of

venue, artists cancellations from the lineup, weather, or other acts of God." as shown below:

## V.    CLASS ACTION ALLEGATIONS

41.     Plaintiffs seek to represent a Class and Subclasses, subject to amendment and

initially defined as initially defined as:

> **Nationwide Class** (the "**Class**")
> All persons in the United States who purchased tickets to Capulet

11

Fest 2024.

**Connecticut State Subclass** (the "**Connecticut Subclass**")

All individuals who purchased tickets to Capulet Fest 2024 who reside in Connecticut.

**Massachusetts State Subclass** (the "**Massachusetts Subclass**")

All individuals who purchased tickets to Capulet Fest 2024 who reside in Massachusetts.

**Pennsylvania State Subclass** (the "**Pennsylvania Subclass**")

All individuals who purchased tickets to Capulet Fest 2024 who reside in Pennsylvania.

**Rhode Island State Subclass** (the "**Rhode Island Subclass**")

All individuals who purchased tickets to Capulet Fest 2024 who reside in Rhode Island.

42.     Excluded from the Class and Subclass are any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

43.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Subclasses before the Court determines whether certification is appropriate.

44.     The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

45.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclasses are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Subclass contains hundreds of ticketholders who have been damaged by Defendants' conduct as alleged herein, the

identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' sales records.

46.    **Commonality.** This action involves questions of law and fact common to the Class and Subclasses. The common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendants' advertisement and sale of a three-day outdoor festival with 50 bands which it ultimately did not provide was unfair, deceptive, or misleading;;

b.    Whether Defendants breached their contractual agreements with ticket purchasers by canceling the event and failing to provide adequate compensation or refunds;

c.    Whether Defendants breached the Implied Covenant of Good Faith and Fair Dealing by canceling Capulet Fest 2024 mid-way through the Event and failing to provide refunds or compensation to ticketholders;

d.    Whether ticket purchasers suffered damages as a result of the last-minute change in venue and cancellation of Sunday of Capulet Fest 2024;

e.    Whether Defendants' conduct, as alleged, constitutes a violation of applicable consumer protection laws, such as the Connecticut Unfair Trade Practices Act (as it pertains to the Connecticut subclass);

f.    Whether Defendants' conduct, as alleged, constitutes a violation of applicable consumer protection laws, such as the Massachusetts Regulation of Business Practice and Consumer Protection Act (as it pertains to the Massachusetts subclass)

g.    Whether Defendants' conduct, as alleged, constitutes a violation of applicable consumer protection laws, such as the Pennsylvania Unfair Trade Practices and Consumer Protection Law (as it pertains to the Pennsylvania subclass)

h.    Whether Defendants' conduct, as alleged, constitutes a violation of applicable consumer protection laws, such as the Rhode Island Unfair Trade Practice and Consumer Protection Act (as it pertains to the Rhode Island subclass)

13

       i.   The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

       j.   Whether Plaintiffs and the Class and Subclasses are entitled to declaratory and injunctive relief and the nature of that relief.

47.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclass because, inter alia, all Class and Subclass members have been injured through the uniform misconduct described above and were misled and deceived, failing to receive the benefit of their bargain. Moreover, Plaintiffs' claims are typical of the Class and Subclass members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclass. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclasses.

48.    **Adequacy of Representation**. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions. Plaintiffs and the Class and Subclasses purchased tickets for Capulet Fest 2024 and were harmed by Defendants' misconduct in that they did not receive the benefit of their bargain and were misled and deceived regarding the Event. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Subclass, and Defendants have no defenses unique to Plaintiffs.

49.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The harm or financial detriment suffered by individual Class and Subclass members, due to not receiving the benefit of their bargain and being misled and deceived, is relatively small compared to the burden and expense that would be entailed by individual

litigation of their claims against the Defendant. It would be virtually impossible for a member of the Class or Subclasses, on an individual basis, to obtain effective redress for the wrongs done to them. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not accommodate it. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system. In contrast, the class action device provides the benefits of adjudicating these issues in a single proceeding, economies of scale, comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

50.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and Subclass. Unless a Class and Subclass are certified, Defendants will be allowed to profit from their negligent, misleading, and deceptive practices, while Plaintiffs and the members of the Class and Subclasses will have suffered damages by not receiving the benefit of their bargain.

51.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

52.     Defendants have acted and refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive relief appropriate with respect to the Class and Subclasses as a whole.

53.     All conditions precedent to bringing this action have been satisfied and/or waived.

## COUNT I
## BREACH OF CONTRACT
**(Plaintiffs, on behalf of themselves and the Class and Subclasses)**

54.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

55.     The ticket is a valid, binding contract between Plaintiffs and putative class members and Defendants.

56.     Defendants breached the contract by failing to provide the Event purchased.

57.     Defendants breached this contract by, *inter alia*, selling tickets to a concert experience that was not provided, significantly altering the event experience, cancelling Sunday June 30 performances, failing to provide food or other vendors, and refusing to issue refunds for tickets and additional fees despite the substantial changes and cancellations. Defendants advertised Capulet Fest 2024 as a three-day outdoor event with over 50 bands, diverse food vendors, and a vibrant marketplace at the Thompson Speedway Motorsports Park. However, none of these promises were fulfilled. Further, by moving the Event from Thompson Speedway Motorsports Park to the Webster, Defendants significantly altered the experience and caused bands that did perform to have their sets drastically shortened, performing at most a handful of songs before being escorted off stage. Defendants also cancelled all performances scheduled for Sunday without prior notice, adequate explanation, or refunds, depriving attendees of the experience they paid for.

58.     As a result, Plaintiffs and putative Class Members have been damaged as a result of Defendants' breach. Plaintiffs and putative Class Members are entitled to any and all consequential damages.

59.     As a result of Defendants' breach of contract, Plaintiffs and putative Class Members have suffered damages, including:

-   The price paid for their ticket and any additional fees paid in connection therewith (i.e., sales tax, fees, etc.).
-   The cost of travel, accommodation, and other expenses incurred in anticipation of attending the festival as advertised.

- The loss of enjoyment and the value of the experience they were promised.

60.     Plaintiffs and putative Class Members are entitled to actual damages arising from Defendants' breach of contract, including consequential, incidental, and all available damages.

### COUNT II
### NEGLIGENCE
**(Plaintiffs, on behalf of themselves and the Class and Subclasses)**

61.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

62.     Defendants owed a duty to Plaintiffs and the Class and Subclasses as paying customers of the Event to use reasonable care to organize and execute the Event in a manner consistent with its advertisements, including communicating significant changes to the attendees in a timely manner and offering them the choice of a refund or a substantially similar experience.

63.     Defendants breached their duties to Plaintiffs and the proposed Class and Subclasses in several ways. Defendants failed to use reasonable care in properly organizing Capulet Fest 2024, failing to secure the promised vendors, bands, and facilities, and continued to make misleading representations about the experience to attendees despite knowing these representations were inaccurate. Defendants also breached their duties by cancelling altogether the Sunday June 30 performances and failing to issue refunds.

64.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed classes suffered significant harm. They purchased tickets to the Event and made travel and accommodation arrangements based on the representations made by Defendants, but Defendants failed to provide the experience promised by Defendants. Defendants' breach directly caused Plaintiffs to suffer damages. But for Defendants' failure to provide an experience as advertised and marketed, Plaintiffs would not have purchased tickets or incurred additional expenses.

17

65.     Plaintiffs and the Class and Subclasses were damaged in an amount to be proven at trial, as they were deprived of the value and experience that Defendants had a duty to provide and negligently failed to deliver.

### COUNT III
### NEGLIGENT MISREPRESENTATION
**(Plaintiffs, on behalf of themselves and the Class and Subclasses)**

66.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

67.     Defendants made express and implied promises or affirmations regarding Capulet Fest 2024. Specifically, Defendants represented that the Event would be a three-day festival experience with over 50 bands across two stages, a variety of food vendors, and a vibrant marketplace at the Thompson Speedway Motorsports Park. Defendants promised a captivating and well-organized event, showcasing a lineup of both established and emerging rock and metal artists, and marketed the festival as an "unforgettable weekend of excitement." In advertising and promoting the Event in this way, Defendant enticed consumers, like Plaintiffs and the Class, to purchase tickets, add-ons, and VIP packages. Defendants' representations were false.

68.     By advertising and selling tickets based on these representations, Defendants created a common law warranty that the event would be as described. This warranty obligated Defendants to deliver an event experience consistent with their promotional materials or to refund ticketholders. Plaintiffs and other consumers justifiably relied on Defendants' representations regarding the legitimacy and scope of Capulet Fest 2024 when deciding to purchase tickets.

69.     Defendants breached this common law warranty in several ways, including but not limited to:

- Changing the venue the night before the Event from an outdoor venue with capacity of roughly 13,000 to an indoor venue with a capacity for roughly 1,200, significantly reducing capacity and not accommodating the advertised festival features;

- Failing to provide the variety of food vendors and marketplace as promised;

- Significantly reducing the number of bands performing and significantly reducing the set time for bands that did perform.

- Failing to properly communicate and disseminate the information regarding the changes to the Event and providing inadequate emergency and contingency plans for ticketholders, such as an option to obtain a refund, credit, or by providing a similar experience.

- Failing to provide a three-day event;

70.     Defendants' promotional materials falsely advertised the event's scope, featuring numerous bands and activities that were either canceled or severely reduced following the venue change. Further, the promised VIP perks and exclusive experiences were rendered meaningless because more than half the bands did not appear, leaving ticketholders and add-on purchasers with none of the benefits they had paid for. Further, Defendants failed to exercise reasonable care or competence in communicating the information about Capulet Fest 2024, including the last-minute change of venue and the significant alterations to the event.

71.     Plaintiffs and other Class members have sustained damages directly due to Defendants' breach of their common law warranty. Defendants engaged in misleading advertising and failed to deliver the promised Capulet Fest experience. The event fell significantly short of what was advertised, and as a result, Plaintiffs and the Class did not receive the value they paid for. This breach resulted in financial losses from ticket costs, travel expenses, and accommodations, as well as emotional distress and disappointment from the subpar event.

72.     Defendants have not refunded Plaintiffs or the Class, despite failing to provide the Event experience that they advertised to Plaintiffs and the Class.

73.     As a direct and proximate result of the foregoing, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

## <u>COUNT IV</u>
## UNJUST ENRICHMENT
### (Plaintiffs, on behalf of themselves and the Class and Subclasses)

### *(Plead in the alternative to Count I)*

74.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

75.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendants.

76.     Plaintiffs and the members of the Class and Subclasses conferred a benefit on Defendants, which Defendant knew about, when they purchased tickets and VIP packages for Capulet Fest 2024.

77.     Plaintiffs and the members of the Class and Subclasses reasonably believed they were purchasing tickets to a well-organized, three-day festival featuring over 50 bands, diverse food vendors, and a vibrant marketplace, as advertised by the Defendants. They suffered financial losses when Defendants did not deliver the Event promised.

78.     By selling tickets and VIP packages for Capulet Fest 2024, Defendants unjustly enriched themselves by taking payment from attendees without providing the advertised festival experience. Despite failing to deliver the promised event, Defendants retained these payments, making their enrichment unjust.

79.     By their wrongful acts and omissions described herein, Defendants were unjustly enriched at the expense of Plaintiffs and the members of the Class and Sub-classes.

80.     Plaintiffs and the Class and Subclasses suffered to their detriment, and Defendants' enrichment was directly related to and flowed from the wrongful conduct alleged in this Complaint.

81.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the putative Class and Sub-classes members. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct described herein.

82.    Plaintiffs and the members of the Class and Subclasses have been damaged as a direct and proximate result of Defendants' unjust enrichment.

83.    Plaintiffs and the members of the Class and Subclasses are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

84.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class and Subclasses are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

<u>**COUNT V**</u>
**Violation of Connecticut's Unfair Trade Practices Act ("CUTPA"),**
**Conn. Gen. Stat. §§ 42-110a et seq.**
**(Plaintiff Lessard on behalf of herself and the Connecticut Sub-class)**

85.    Plaintiff Lessard repeats and realleges each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

86.    Plaintiff Lessard brings this claim individually and on behalf of the members of the Connecticut Sub-class against Defendant.

87.    Plaintiff Lessard purchased tickets for Capulet Fest 2024, expecting to receive the advertised benefits of a three-day outdoor festival featuring numerous bands, diverse food vendors, and unique marketplace offerings. However, Defendants failed to deliver the Event that was purchased.

88.     Plaintiff Lessard and Defendants are "persons" as defined by Conn. Gen. Stat. § 42-110(a)(3).

89.     At all times relevant hereto, Defendants were engaged in trade or commerce as defined under CUTPA, Conn. Gen. Stat. § 42-110(a)(4).

90.     CUTPA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

91.     Defendants' misrepresentations of Capulet Fest 2024 as a well-organized, three-day festival with over 50 bands, multiple food vendors, and a vibrant marketplace were deceptive and misleading, and as such constitutes an unfair trade practice.

92.     Furthermore, Defendants relocation of the event to significantly smaller location just one day before the event, resulting in numerous cancellations and a diminished experience, which attendees had no control over and could not reasonably avoid, was unfair.

93.     In addition, Defendants bad faith retention of Plaintiffs' money despite failing to provide the event advertised, failing to provide a 3-day event, failing to provide an event with the advertised bands, is an unfair and unlawful act.

94.     The foregoing violations of CUTPA led to substantial financial losses for attendees who had were not provided with the Event that was purchased, and/or who made travel and accommodation arrangements based on the original venue and schedule.

95.     Defendants' conduct caused substantial injury to consumers which is not reasonably avoidable and is not outweighed by any countervailing benefits.

96.     Plaintiff Lessard and the Connecticut Subclass sustained actual damages as a result of Defendants' deceptive and unfair practices. Had Defendants not engaged in these practices,

22

Plaintiff Lessard and the Connecticut Subclass members would not have sustained an ascertainable loss, measured by the amount they paid for tickets and related expenses.

97.    By reason of the foregoing, Defendants' conduct constitutes a deceptive and unfair practice committed in the course of trade and commerce, causing actual damages to Plaintiff Lessard and the Connecticut Subclass, in violation of CUTPA, and Defendants are liable for the damages sustained.

98.    Based on Defendants' unfair and/or deceptive acts or practices, Plaintiff Lessard and the Connecticut Sub-class are entitled to relief, including restitution, actual damages, statutory damages, punitive damages, costs, and attorneys' fees under Conn. Gen. Stat. § 42-110g.

## COUNT VI
### Violation of Massachusetts' Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1 *et seq.* (Plaintiff Abrams on behalf of herself and the Massachusetts Subclass)

99.    Plaintiff Abrams repeats and realleges each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

100.    Plaintiff Abrams brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendants.

101.    Plaintiff Abrams purchased tickets for Capulet Fest 2024, expecting to receive the advertised benefits of a three-day outdoor festival featuring numerous bands, diverse food vendors, and unique marketplace offerings. However, Defendants failed to provide the Event that Plaintiff purchased.

102.    Plaintiff Abrams and Defendant are "persons" as defined by Mass. Gen. Laws ch. 93A, § 1(a).

103.    At all times relevant hereto, Defendants were engaged in trade or commerce as defined under Mass. Gen. Laws ch. 93A, § 1(b).

104.    The Massachusetts Regulation of Business Practice and Consumer Protection Act ("MCPA") declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a).

105.    Defendants' misrepresentations of Capulet Fest 2024 as a well-organized, three-day festival with over 50 bands, multiple food vendors, and a vibrant marketplace were deceptive and misleading, and as such constitutes an unfair trade practice.

106.    Furthermore, Defendants relocation of the event to significantly smaller location just one day before the event, resulting in numerous cancellations and a diminished experience, which attendees had no control over and could not reasonably avoid, was unfair.

107.    In addition, Defendants bad faith retention of Plaintiffs' money despite failing to provide the event advertised, failing to provide a 3-day event, failing to provide an event with the advertised bands, is an unfair and unlawful act.

108.    The foregoing violations of MCPA led to substantial financial losses for attendees who had were not provided with the Event that was purchased, and/or who made travel and accommodation arrangements based on the original venue and schedule.

109.    Defendants' conduct caused substantial injury to consumers which is not reasonably avoidable and is not outweighed by any countervailing benefits.

110.    Plaintiff Abrams and the Massachusetts Subclass sustained actual damages as a result of Defendants' deceptive and unfair practices. Had Defendants not engaged in these practices, Plaintiff Abrams and the Massachusetts Subclass members would not have sustained an ascertainable loss, measured by the amount they paid for tickets and related expenses.

111.    By reason of the foregoing, Defendants' conduct constitutes a deceptive and unfair practice committed in the course of trade and commerce, causing actual damages to Plaintiff

Abrams and the Massachusetts Subclass, in violation of the MCPA, and Defendants are liable for the damages sustained.

112.    Based on Defendants' unfair and deceptive acts or practices, Plaintiff Abrams and the Massachusetts Subclass are entitled to relief, including restitution, actual damages, statutory damages, double damages, treble damages, punitive damages, costs, and attorneys' fees under Mass. Gen. Laws ch. 93A, § 9(4).

## COUNT VII
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,
73 Pa. Stat. Ann. §§ 201-1 *et. seq*.
(Plaintiff Walton on behalf of himself and the Pennsylvania Subclass)**

113.    Plaintiff Walton repeats and realleges each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

114.    Plaintiff Walton brings this claim individually and on behalf of the members of the Pennsylvania Subclass against Defendant.

115.    Plaintiff Walton purchased a Royal Pass for Capulet Fest 2024, expecting to receive the advertised benefits of a three-day outdoor festival featuring numerous bands, diverse food vendors, and unique marketplace offerings. However, Defendants failed to deliver the promised experience, misleading and deceiving attendees.

116.    Plaintiff Walton and Defendants are "persons" as defined by 73 P.S. § 201-2(2).

117.    At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPA"), 73 P.S. § 201-2(3).

118.    The PUTPA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3.

119.    Section 201-2(4)(xxi) of the PUTPA prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

120.    Defendants engaged in fraudulent or deceptive conduct by misrepresenting that Capulet Fest 2024 would be a three-day festival with over 50 bands, multiple food vendors, and a vibrant marketplace when in fact Defendants did not secure a venue, did not secure over 50 bands, and did not secure multiple food vendors.

121.    Section 201-2(4)(ix) of the PUTCPA makes unlawful the "advertising of goods or services with intent not to sell them as advertised."

122.    Defendants advertised Capulet Fest 2024 as a three-day festival with over 50 bands, multiple food vendors, and a vibrant marketplace despite not having secured a venue, over 50 bands, or multiple food vendors.

123.    Defendants advertised Capulet Fest 2024 with the intent not to provide what was advertised for sale.

124.    As such, Defendants violated Section 201-2(v)(ix) of the PUTPA.

125.    Defendants' unfair and deceptive acts and practices prohibited under Section 201-2(4)(xxi) and (ix) are unlawful.

126.    Plaintiff Walton and the Pennsylvania Subclass justifiably relied on Defendants' misrepresentations about the festival's schedule, lineup, venue, and amenities when purchasing their tickets and making related travel and accommodation arrangements. As a result of Defendants' deceptive and unfair practices, Plaintiff Walton and the Pennsylvania Subclass sustained actual damages, including the costs incurred for tickets, travel, and accommodations.. Had Defendants not engaged in these practices, Plaintiff Walton and the Pennsylvania Subclass

members would not have sustained an ascertainable loss, measured by the amount they paid for tickets and related expenses.

127.    By reason of the foregoing, Defendants' conduct constitutes a deceptive and unfair practice committed in the course of trade and commerce, causing actual damages to Plaintiff Walton and the Pennsylvania Subclass, in violation of the PUTPA, and Defendants are liable for the damages sustained.

128.    Based on Defendants' unfair and/or deceptive acts or practices, Plaintiff Walton and the Pennsylvania Subclass are entitled to relief, including restitution, actual damages, statutory damages, treble damages, punitive damages, costs, and attorneys' fees under 73 P.S. § 201-9.2.

## COUNT VIII
### Violation of Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1 *et seq*.
### (Plaintiff White on behalf of herself and the Rhode Island Subclass)

129.    Plaintiff White repeats and realleges each and every allegation contained in paragraphs 1–53 as if fully set forth herein.

130.    Plaintiff White brings this claim individually and on behalf of the members of the Rhode Island Subclass against Defendants.

131.    Plaintiff White purchased tickets for Capulet Fest 2024, expecting to receive the advertised benefits of a three-day outdoor festival featuring numerous bands, diverse food vendors, and unique marketplace offerings. Specifically, Plaintiff White expected to receive at least one musical performance. However, because Defendants cancelled the Sunday portion of the Event, Defendants failed to deliver the promised experience, misleading and deceiving attendees like Plaintiff White.

132.    Plaintiff White and Defendants are "persons" as defined by R.I. Gen. Laws § 6-13.1-1(3).

133.    At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the Rhode Island Unfair Trade Practices and Consumer Protection Act ("RIUTPA"), R.I. Gen. Laws § 6-13.1-1(5).

134.    RIUTPA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6-13.1-2.

135.    Defendants' misrepresentations of Capulet Fest 2024 as a well-organized, three-day festival with over 50 bands, multiple food vendors, and a vibrant marketplace were deceptive and misleading, and as such constitutes an unfair trade practice.

136.    Defendants' aforementioned misrepresentations regarding the event affected Plaintiffs' conduct regarding the product – namely, the misrepresentations regarding the event were the reason that Plaintiffs and those similarly situated purchased tickets.

137.    Furthermore, Defendants relocation of the event to significantly smaller location just one day before the event, resulting in numerous cancellations and a diminished experience, which attendees had no control over and could not reasonably avoid, was unfair.

138.    In addition, Defendants bad faith retention of Plaintiffs' money despite failing to provide the event advertised, failing to provide a 3-day event, failing to provide an event with the advertised bands, is an unfair and unlawful act.

139.    The foregoing violations of RIUTPA led to substantial financial losses for attendees who had were not provided with the Event that was purchased, and/or who made travel and accommodation arrangements based on the original venue and schedule.

140.    Defendants' conduct caused substantial injury to consumers which is not reasonably avoidable and is not outweighed by any countervailing benefits.

141.    Plaintiff White and the Rhode Island Subclass sustained actual damages as a result of Defendants' deceptive and unfair practices. Had Defendants not engaged in these practices, Plaintiff White and the Rhode Island Subclass members would not have sustained an ascertainable loss, measured by the amount they paid for tickets and related expenses.

142.    By reason of the foregoing, Defendants' conduct constitutes a deceptive and unfair practice committed in the course of trade and commerce, causing actual damages to Plaintiff White and the Rhode Island Subclass, in violation of the RIUTPA, and Defendants are liable for the damages sustained.

143.    Based on Defendants' unfair and/or deceptive acts or practices, Plaintiff White and the Rhode Island Subclass are entitled to relief, including restitution, actual damages, statutory damages, treble damages, punitive damages, costs, and attorneys' fees under R.I. Gen. Laws § 6-13.1-5.2(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment against Defendants in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class and Subclass Members;

B.    Naming Plaintiff Lessard as the representative of the Connecticut Subclass;

C.    Naming Plaintiff Abrams as the representative of the Massachusetts Subclass;

D.    Naming Plaintiff Walton as the representative of the Pennsylvania Subclass;

E.    Naming Plaintiff White as the representative of the Rhode Island Subclass;

F.    Declaring that Defendants' conduct violated the laws referenced herein;

G.    Finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

H.      Awarding actual, consequential, punitive, statutory and treble damages;

I.      Awarding applicable prejudgment and post-judgment interest on all amounts awarded;

J.      For injunctive relief as pleaded or as the Court may deem proper;

K.      For disgorgement and restitution to Plaintiffs and the Class and Subclass members of all monies received or collected from Plaintiffs and the Class and Subclass members and all forms of equitable relief;

L.      Awarding Plaintiffs and the Class and Subclasses reasonable attorneys' fees and expenses and costs of suit;

M.      Awarding damages in an amount to be determined at trial; and

N.      For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury as to all triable issues.


Date: July 22, 2024                      Respectfully submitted,



**SIRI & GLIMSTAD LLP**

/s/ *Oren Faircloth*
Oren Faircloth (Bar No. ct30530)
Lisa R. Considine (*Pro Hac Vice* to be filed)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (929) 677-5181
Fax: (646) 417-5967
E: ofaircloth@sirillp.com
E: lconsidine@sirillp.com

*Attorneys for Plaintiffs and the Class and Subclasses*